■ HENRY MODELL & CO., INC., et al., Respondents, v REGENCY-LEXINGTON PARTNERS et al., Appellants.—Motion for reargument of, or alternatively for leave to appeal to the Court of Appeals from, an order of this court dated December 28, 1978 (66 AD2d 756), reversing an order of the Supreme Court, New York County, dated June 30, 1978, granting respondents' motion for a preliminary injunction. Motion for reargument is granted and otherwise the motion is denied, without costs or disbursements.

Upon reargument, the memorandum decision of this court and the order entered thereon are hereby vacated and recalled and a new memorandum decision is substituted as follows: Order, Supreme Court, New York County, entered June 30, 1978, modified, on the law and on the facts, to the extent of vacating so much of the order as authorized appellants in lieu of plywood boarding to construct a railing or a fence of whatever material they choose no higher than three feet but no nearer than three feet from in front of the plateglass windows, and otherwise affirmed, without costs or disbursements. Respondents are retail commercial tenants occupying premises on the street level of the former Hotel Commodore which is now in the process of being renovated and reconstructed into a new Hyatt Hotel. In the course of this work, appellants built a sidewalk shed sealed with plywood along the side facing the building. The result has been to block respondents' store windows from the view of passers-by. Alleging irreparable injury, respondents commenced this action for injunctive relief seeking removal of any and all boarding in front of their store windows. In their answering papers, the appellants pointed out that the New York City Building Code (Administrative Code of City of New York, ch 26, tit C, art 19), requires a sidewalk shed to be sealed along the side facing the structure unless a roof can be built solidly against the building facade. Alleging that the renovation will require removal of substantial portions of the facade, appellants argued that it was not feasible to build the roof of the shed solidly against it. In the order appealed from, Special Term provided in substance that the defendants were to remove the plywood boarding from in front of the stores of the respondents; that the appellants were to build the top deck of the sidewalk shed solidly against the face of the building facade to the extent consistent with the necessary construction work; and that the appellants in lieu of a plywood building may construct a railing or a fence no higher than three feet and no nearer than three feet from in front of the plateglass windows. In addition, the order provided for the maintenance of insurance coverage by the respondents, their assumption of full responsibility for breakage to their windows or damage to their property, and their agreement to indemnify defendants for injuries that may be occasioned to pedestrians by reason of falling materials. The relevant sections of the New York City Building Code appear in section C26-1901.5 (b) (9) (12) of the Administrative Code: "(9) Unless the top deck of the sidewalk shed is built solidly against the face of the structure in such a manner that no material can fall onto the sidewalk, the side of the shed toward the structure shall be solidly sealed with wood or other suitable material for the full height of the shed. Solid sliding or inswinging gates may be provided as necessary for the proper prosecution of the work. * * * (12) When a sidewalk shed is required for the demolition of a structure, the sidewalk shed shall be completed before any demolition work is performed. Such shed shall remain in place until the structure has been razed to the height of the shed". As originally argued, the central issue involved that part of Special Term's order that authorized appellants to construct a railing or fence no higher than three feet and no nearer than three feet from in front of the plateglass windows. The question appeared to be whether the court could properly authorize the appellants to construct a shed that did not conform to the requirements of the building code. A majority of the court (two Judges dissenting) concluded that it could not, and that continues to be the view of a majority of this court. On reargument, respondents contend that this court's decision was based on the assumption that it was not possible to build the top deck of the sidewalk shed "solidly against the face of the structure in such a manner that no

material can fall onto the sidewalk" (see par [9]) and that this assumption was erroneous. After a review of the record, we are persuaded that this contention has merit. As already noted, appellants had alleged in their answering papers that a time would come when the demolition of parts of the facade would make it impossible to maintain the top deck of the sidewalk shed firmly against the building. However, appellants failed to disclose when that time would come. It seems clear that when the sidewalk shed was constructed, there was then no necessity for constructing it in a manner so manifestly harmful to respondents' businesses. The papers submitted by both parties on the motion for reargument strongly indicate that there has been no change in that situation. As noted above, paragraph (12), requires a sidewalk shed to be completed before any demolition work is performed and to remain in place until the structure has been razed to the height of the shed. We do not understand that subdivision to mean, as appellants implicitly suggest, that once a shed has been completed its character may not thereafter be altered to meet changing requirements. Accordingly, we are in agreement with that part of Special Term's order that directed the appellants to remove the plywood boarding from the side facing the building. We continue, however, to be of the view that Special Term erred in authorizing the appellants to construct the building shed in a manner not sanctioned by the building code. What is required is a prompt trial to develop all of the relevant facts. Among the issues that should be considered at the trial is whether the work of renovation will in fact make it impossible to maintain the roof of the shed against the facade; if so, when that time will come; and, if and when such a time comes, whether plexiglass or some other transparent material may not be used on the side of the shed facing the structure of the building. Present—Kupferman, J. P., Fein, Sandler, Silverman and Yesawich, JJ.

. Kupferman, J. P., and Yesawich, J., concur in a separate memorandum; Fein and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows:

Kupferman, J. (concurring). While I adhere to the views originally expressed in my dissenting opinion (66 AD2d 756), I believe that the opinion of the court on reargument now presents a rational approach to a practical problem with which I can concur.

Fein and Silverman, JJ., dissent in memorandum by Silverman, J.: We would adhere to our original decision reversing the order appealed from and denying the preliminary injunction. We do not deem ourselves qualified in the field of building demolition to say on this record that it is possible or practical to build the top deck of the structure sidewalk shed "solidly against the face of the structure in such a manner that no material can fall onto the sidewalk". And even if we were so qualified, we may not consider new facts not in the record on appeal contained in the papers on the motion for reargument in this court. There is still too severe a danger that the injunction authorizes a construction that does not conform to the requirements of the building code, and that endangers the passing public. At a minimum, the issues are not clear enough to warrant a preliminary injunction. If the court deems that the new facts presented on the motion for reargument may undermine the basis of our decision, the most we should do would be to stay our decision for a limited period to preserve the *status quo* while the parties present the new facts to Special Term. The result mandated by the present decision is an order which directs defendants to remove the plywood boarding in front of plaintiff's store front; and directs that defendants "build the top deck of the sidewalk shed solidly against the face

of the building facade in such a manner that no material can fall onto the sidewalk *to the extent that that is consistent with the necessary construction work that is being undertaken in connection with the renovation of the hotel."* (Emphasis added.) The order is an impermissible weakening of the building code requirement for protection of the public by either solidly sealing the side of the shed, or building the top deck solidly against the face of the structure. This court apparently sustains the provision of the order appealed from which instructs the city to make no attempt to stop construction because of any violation of the building code "caused by this order" without making application to Special Term. The court should not issue an order which causes a violation of the building code, or interferes with the city's proper enforcement of it. The problem is in no way met by provisions as to who shall carry insurance or bear the risk of liability for damage to persons or property. The building code is concerned, as we are, not with insurance but with the safety of pedestrians. We of course agree that it is desirable to have a very prompt trial.